**Evan A. Schmutz (3860)**
 *eschmutz@djplaw.com*
**Jordan K. Cameron (12051)**
 *jcameron@djplaw.com*
**DURHAM JONES & PINEGAR, P.C.**
3301 N Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone: (801) 375-6600
Fax: (801) 375-3865

Attorneys for Plaintiff XMission, L.C.

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah limited liability company,<br><br>          Plaintiff,<br><br>vs.<br><br>THOMPSON AND COMPANY, INC., a Florida corporation ; DOES 1-40,<br><br>          Defendants. | **COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>Case No.:<br><br>Judge |

COMES NOW Plaintiff XMission, L.C. ("XMission"), and complains and alleges the following:

PARTIES, JURISDICTION AND VENUE

1.     Plaintiff XMission is a Utah limited liability company with its principal place of business in Salt Lake City, Utah, and at all relevant times hereto was duly registered and licensed to do business in the State of Utah.

2. Defendant Thompson and Company, Inc. DBA Thompson Cigars, is a Florida corporation.

3. On information and belief DOES 1-40 are individuals and companies doing business in association with the above named-defendant, either as shareholders, officers, members, affiliates and/or publishers, some or all or all of whom are alter egos of the named Defendant.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), for violations of the 15 U.S.C. §7701 *et seq.* (CAN-SPAM Act of 2003), and pursuant to 15 U.S.C. § 7706(g)(1) (original jurisdiction) for cases involving a civil action by an internet access service adversely affected by a violation of 15 U.S.C. §7704(a)(1), 15 U.S.C. §7704(b), or 15 U.S.C. § 7704(d), or a pattern and practice that violates subparagraphs (2), (3), (4), and/or (5) of 15 U.S.C. § 7704(a).

5. This Court has personal jurisdiction over the Defendants because the Defendants, and each of them, are residents of the state of Utah, are businesses organized and existing under the laws of the state of Utah, and/or because Defendants have purposefully availed themselves of the privileges of conducting commercial activity in the forum state, in part, through the sending of thousands of commercial e-mails in to the state, and the exercise of jurisdiction is reasonable since Defendants should have known that they would be subject to the jurisdiction and laws of the forum state when they sent, or caused the commercial e-mails to be sent to customers of an e-mail service provider located in Utah.

6. Venue is proper pursuant to 18 U.S.C. § 1391, as a substantial part of the unlawful actions by the Defendants, and each of them, occurred in this judicial district.

## GENERAL ALLEGATIONS

7. XMission was founded in 1993 as Utah's first Internet Service Provider ("ISP").

8. From its early days as a private, Utah ISP, to its current role as a global business Internet provider, XMission has expanded its technical offerings to include sophisticated cloud hosting, web hosting, e-mail service and hosting, collaboration tools, business VoIP phone service, and high speed internet connectivity solutions including optical Ethernet, copper and fiber.

9. Throughout its history, XMission has also worked with hundreds of Utah's nonprofit organizations by providing free web hosting services, and by sponsoring a variety of community-based events and facilities.

10. XMission is a widely known and well-recognized ISP in Utah.

11. XMission owns all the servers, routers, and switches on its network through which it hosts and provides its Internet access services for its customers.

12. XMission has an expansive network and infrastructure, which it has had to consistently update, upgrade and augment in order to combat ongoing SPAM problems.

13. XMission is the sole owner of all its hardware, and has complete and uninhibited access to, and sole physical control over, the hardware.

14. As a legitimate and leading ISP, XMission is a bona fide Internet Access Service ("IAS") as that term defined under 15 U.S.C. § 7702(11) and 47 U.S.C. § 231(e)(4).

SLC_2222468

15. XMission provides Internet access services to both commercial and residential customers.

16. The e-mail accounts hosted and served by XMission include e-mail accounts owned by third-party customers of XMission, e-mail accounts owned by employees and/or customers of XMission's third-party customers, e-mail account owned by employees of XMission, and also e-mail accounts owned by XMission itself.

17. SPAM is defined as commercial electronic mail messages (e-mail).

18. From early January, 2015 through mid May, 2015, XMission received approximately 33,909 SPAM e-mails, sent and/or initiated by the Defendants collectively, which independently and collectively adversely affected XMission, and which independently and collectively contributed to an overall SPAM problem.

19. On information and belief, none of the owners of the e-mail addresses gave their affirmative consent, as it is defined in 15 U.S.C. § 7702(1) to receive commercial e-mails from the Defendants and/or about the Defendants' products, services, or websites.

20. On information and belief, Thompson is the "Sender" the e-mail messages as its product, service, and/or website is advertised in the e-mail messages, and as it either transmitted or procured the transmission of the e-mails in question as such term is defined in 15 U.S.C. § 7702(12) and 7706(g)(2)..

21. Thompson either directly transmitted, or caused the transmission of, each of the 33,909 SPAM e-mails at issue in this Complaint during the time period in question.

22. On information and belief, various of the DOES 1-40, are "Initiators" of the e-mails collectively, as each of them, in some way, benefitted from the advertising in the messages

SLC_2222468

and/or initiated or procured the e-mails in question, and who have initiated or sent the e-mails with the knowledge and/or active participation of Defendant.

23. Each of the e-mails is a commercial message and contains commercial content.

24. The e-mails, and each of them, were received by XMission on its mail servers located in Utah.

25. Throughout its business, XMission has expended well in excess of $3,000,000 in hardware acquisition, maintenance and related expenses to increase capacity to deal with increased SPAM and related harm, SPAM filtering expenses, and employee time in dealing with problems caused by its receipt of SPAM generally.

26. XMission expends approximately $100,000 to $200,000 per year in dealing with SPAM related issues and associated employee time, exclusive of attorney fees.

27. The harm XMission continues to suffer, as the result of its collective SPAM problem, is much more significant than the mere annoyance of having to deal with SPAM or the process of dealing with SPAM in the ordinary course of business (i.e., installing a spam filter to flag and discard spam).

28. The harm XMission suffered, and continues to suffer, is manifested in financial expense and burden significant to an ISP; lost employee time; lost profitability; the necessity to purchase and dedicate equipment specifically to process SPAM that could otherwise be dedicated providing internet access services; harm to reputation; and customer and e-mail recipient complaints, including 525 Thompson e-mails that XMission customers complained of by manually reporting the e-mails as SPAM.

SLC_2222468

29. Each of the SPAM e-mails in question is part of the same commercial marketing campaigns that resulted in the 525 customer SPAM reports identified above.

30. Each of the e-mails in question violates multiple CAN-SPAM provisions.

31. The majority of the SPAM e-mails received by XMission, including the e-mails in question, violate the CAN-SPAM Act in one or more ways, and contributed to a larger SPAM problem.

FIRST CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)**

32. Each of the previous paragraphs is realleged herein.

33. The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. § 7704(a)(1).

34. Header information is materially false or misleading under Section 7704(a)(1) where it includes an invalid or unregistered sender domain. In other words, the sender domain identified in the e-mail header as the domain from which the e-mail was sent is not a domain name that legitimately exists, could not be used to transmit an e-mail, and is therefore inherently false.

35. Here, the header information in 1,245 e-mails contained sender domains that were spoofed (i.e., identifying an unrelated third party), or otherwise false or unregistered. Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

36. Header information is materially false or materially misleading under Section 7704(a)(1) where it includes an inaccurate transmission IP address. In other words, the transmitting party represented that the e-mail was being sent from a specific domain, when in

6

fact, the IP address used to actually transmit the e-mail does not match the represented sender domain.  Under these circumstances, the header information is false on its face because it contains false transmission information.

37. Here, 1,303 e-mails contained e-mail headers with IP addresses that were false in that they did not match the identified sender domains.  Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

38. Header information is materially false or materially misleading under Section 7704(a)(1) where it contains a generic "from" name and the e-mail is sent from a privacy-protected domain name, such that the recipient cannot identify the sender from the "from" name or the publicly available WHOIS information.

39. Here, 6,339 e-mails contained a generic "from" name and originated from a privacy-protected domain.  Accordingly, these e-mails violate 15 U.S.C. § 7704(a)(1).

40. The aforementioned accounts for 8,887 violations of 15 U.S.C. § 7704(a)(1).

41. Pursuant to 15 U.S.C. § 7706(g)(3), XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1).

SECOND CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)(A)**

42. Each of the previous paragraphs is realleged herein.

43. The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information.  15 U.S.C. § 7704(a)(1).

44. "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for

purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading." 15 U.S.C. § 7704(a)(1)(A).

45. Therefore, an e-mail violates Section 7704(a)(1)(A) where: 1) the sender domain was registered with an ICANN compliant domain registrar; 2) the registrar maintains an anti-spam policy; and, 3) the domain was registered for a purpose that violates that registrar's policy (i.e., has no other apparent, legitimate purpose).

46. An e-mail that satisfies these criteria violates the law regardless of whether the e-mail contains a header that is technically accurate.

47. Approximately 20,850 of the e-mails in question originated from sender domains registered with ICANN compliant domain registrars who maintain anti-spam policies, and which sender domains served no legitimate purpose other than to violate the anti-spam policies.

48. Specifically, e-mails were sent from sender domains registered with BigRock Solutions, Ltd., CSL Computer Service Langenbach GmbH, eNom, Inc., GoDaddy.com, Moniker Online Services LLC, and PDR Ltd. d/b/a PublicDomainRegistry.com.

49. Each of the 20,850 e-mails identified above violates §7704(a)(1)(A) as set forth herein.

50. Pursuant to 15 U.S.C. § 7706(g)(3), XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1)(A).

THIRD CAUSE OF ACTION
**Aggravated Damages – CAN-SPAM Act 15 U.S.C §7706(g)(3)(C)**

51. Each of the previous paragraphs is realleged herein.

52. On information and belief, each of the Defendants committed the violations set forth above willfully and knowingly; or, in the alternative, each of the Defendant's unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

53. Specifically, on information and belief, each of the Defendants engaged in dictionary attacks, used scripts or other automated means to created sender and recipient e-mail addresses, and engaged in relaying and retransmitting in violation of 15 U.S.C. §7704(b)(1), (2), and/or (3).

54. Accordingly, XMission prays for treble damages of the total damage amount determined by this Court.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

A. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1).

B. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1)(A).

C. Treble damages pursuant to 15 U.S.C. § 7706(g)(3).

D. Attorneys' fees and costs pursuant to 15 U.S.C. § 7706(g)(4).

E. Pre and post-judgment interest at the highest rate permitted by law.

F. Entry of permanent injunction against each Defendant prohibiting each Defendant from sending or causing to be sent e-mail message to XMission and its customers.

G. All other relief deemed just in law or equity by this Court.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues triable of right in this action, pursuant to Rule 38(b), Federal Rules of Civil Procedure.

SLC_2222468

DATED this 29th day of May, 2015.

                                            DURHAM, JONES & PINEGAR, P.C.


                                            /s/ Evan A. Schmutz
                                            Evan A. Schmutz
                                            Jordan K. Cameron
                                            *Attorneys for Plaintiff*

Plaintiff's Address:
51 East 400 South
Suite 200
Salt Lake City, Utah 84111

10

SLC_2222468